# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Case No. 1:06CR00046 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| RODNEY EDWARD STEWART, | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, Rodney Edward Stewart, a federal inmate, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2011). The government has moved for dismissal and counsel for Stewart has responded. After careful review of the record, I am of the opinion that the government's Motion to Dismiss must be granted.

## I

The grand jury of this court returned an Indictment charging that Stewart possessed a firearm after having been convicted of a felony, in violation of 18 U.S.C.A. § 922(g)(1) (West Supp. 2011), and that he was subject to an enhanced

sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e) (West Supp. 2011). Stewart pleaded not guilty and proceeded to a jury trial.

The evidence at Stewart's trial was as follows.

While patrolling Interstate 77 in Wythe County, Virginia, on May 8, 2006, Captain Doug Tuck of the Wythe County Sheriff's Office observed a car at 75 miles per hour and made a traffic stop of the vehicle. Three individuals were in the car: Roger Lee Shelton, the driver; Richie Nichols, seated on the back seat; and the defendant Rodney Edward Stewart, seated in the front passenger seat. Shelton produced his driver's license, but admitted that it had been suspended for failure to pay child support. Stewart told Tuck he did not have identification, wrote down his name as "Alan Scott," and claimed that he did not remember his social security number.

Tuck asked if there were any weapons in the car. Shelton told him that he had his .40 caliber pistol between the front seats and that the clip for the gun was in the glove compartment. Shelton then handed these items to Tuck. After a dispatcher informed Tuck that the gun had previously been reported stolen, Tuck arrested Shelton and Stewart for possession of a stolen firearm.

At the police station, fingerprint records indicated that "Alan Scott" was actually the defendant. After receiving *Miranda* warnings, Stewart told Tuck, "You've got me, Officer. The gun in the vehicle was mine. No need to charge

both of us." (Tr. 18, Jan. 18, 2007.)  When asked if the pistol was his, Stewart said, "I guess so.  I'm charged with it. . . . It might well be mine.  You charged me with it.  I don't have nothing else to say." (*Id.* 26.)  On redirect examination, Tuck testified that Stewart had said that he had "beat this charge in New Jersey before, and he wanted to go to the feds." (*Id.* 27.)

In a written statement read into the trial record by Tuck at the request of Stewart's attorney, Shelton said that he had picked Stewart and Nichols up and that Stewart had taken the gun from his pants and put it between the front seats, and then removed the clip and put it in the glove box at Shelton's request.  Shelton said that he had lied at the traffic stop about ownership of the gun because Stewart had a criminal record and he did not want any of them to get in trouble.

Nichols testified that his girlfriend had driven him and Stewart to the Hurley family's residence, where she got angry with them, accused Stewart of taking money from her, and told them to walk.  Stewart then phoned Shelton to ask for a ride and told him to bring a gun "because some people were going to jump" them. (*Id.* 35-36.)

Nichols testified that after he and Stewart had gotten in Shelton's car, Officer Tuck started following the car.  At that point, Nichols said he saw Shelton pull a gun from underneath the seat, pull the clip out, and put the gun on the

console.  Nichols was not sure whether Shelton or Stewart put the clip into the glove box.

Shelton testified that he had known Stewart through friends, had hired him to help with building projects on occasion, had given him rides, and had gone to a shooting range for target practice with him a few times, where he and Stewart had shot a rifle and the pistol seized by Tuck.  Shelton stated that on May 8, 2006, Stewart had called and asked for a ride and a gun.  Once in the car, Stewart asked if Shelton had brought the gun.  Because Tuck was already following them, Shelton said, he grabbed the gun and asked Stewart to put the clip in the glove box and to put the gun in clear sight on the console, which Stewart did.  Shelton testified that he had lied to the grand jury to protect himself against a charge for gun possession by saying Stewart had the gun when he got into the car.

Jeteime Arrington, a convicted felon, testified that while he and Stewart had been incarcerated together, Stewart told him that on the day of his arrest, he had asked his boss to bring him a gun because some people might want to fight him, and "[w]hen the boss brought his gun, he jumped in the vehicle with the gun, and they got pulled over with the gun."  (*Id.* 78.)  Arrington also said Stewart told him that he had been to the shooting range with his boss.

Testifying in his own defense, Stewart denied having gone to the shooting range with Shelton and having told Arrington about firing weapons with Shelton.

He said that on May 8, 2006, when he was with Nichols, he had he called Shelton for a ride and asked him to bring his gun.

Stewart testified that after Shelton had picked up him and Nichols and Tuck began following them, Shelton "got a gun from somewhere" under the seat, took out the clip, put the gun on the console, and asked Stewart to open the glove box so Shelton could hide the clip. Stewart said he heard Shelton tell Tuck that Stewart was named "Al," so he told Tuck that his name was Al Scott (his cousin's name), thinking that the officer would run a records check on Shelton and let them leave. Stewart also used this fake name because he knew that as a felon, he should not have been around a firearm. Stewart denied ever seeing the gun before May 8, denied making statements to Tuck about wanting to go to federal prison, and said his signed statement was sarcastic.

The jury found Stewart guilty as charged. After conducting a sentencing hearing, I found that Stewart qualified for an enhanced sentence under § 924(e) based on his prior convictions, and sentenced him to 240 months in prison.

Stewart appealed, challenging the sufficiency of the evidence. The United States Court of Appeals for the Fourth Circuit affirmed the judgment. *United States v. Stewart*, 269 F. App'x 332 (4th Cir. 2008).

In his initial § 2255 motion, Stewart raised the following claims: (1)(a) the government used Shelton's perjured grand jury testimony to obtain the Indictment

without correcting the perjury and (b) counsel provided ineffective assistance in failing to challenge the validity of the Indictment in pretrial or post-trial motions; (2) he was arrested without probable cause; (3) counsel provided ineffective assistance by (a) failing to move to dismiss or to suppress his post-arrest statements to law enforcement, (b) engaging in improper cross-examination of a government witness, (c) failing to object to the government's constructive amendment of the Indictment, (d) presenting an "illogical" and "legally inconsistent theory of defense," and (e) failing to object to the government's presentation of testimony from a witness wearing shackles and prison garb; and (4) appellate counsel provided ineffective assistance by failing to press the issues raised in Claims 1 through 3.

Stewart later moved to amend his § 2255 motion to raise two additional claims: (5) he is "actually innocent" of being an armed career criminal under § 924(e) because three of the five prior convictions used to apply the ACCA enhancement do not qualify as prerequisite offenses under that statute; and (6) the government knowingly presented perjured testimony before the grand jury. Because of the difficulty the parties had in obtaining records pertaining to Stewart's prior convictions, I appointed counsel for Stewart and allowed him to file a response.

The government has filed a Motion to Dismiss Stewart's § 2255 motion, and counsel for Stewart has responded. The issues are now ripe for decision.

## II

## A

A collateral attack under § 2255 may not substitute for an appeal. Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice or demonstrates actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Attorney error can serve as cause for default, but only if it amounts to a violation of the defendant's constitutional right to effective assistance. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

On appeal, Stewart could have raised Claims (1)(a), (2), (5), and (6), alleging prosecutorial misconduct before the grand jury, illegal arrest, and court error at sentencing. He failed to do so. Therefore, these claims are procedurally barred from review under § 2255 absent a showing of cause and prejudice or actual innocence.

As cause to excuse the defaults of Claims (1)(a), (2), and (6), and as separate grounds for relief under § 2255, Stewart asserts ineffective assistance of counsel.

For the reasons stated below, however, he fails to demonstrate that counsel's alleged errors rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Therefore, he fails to demonstrate cause for his default. As he also makes no colorable claim that he is actually innocent of the crime for which he stands convicted,[1] I must dismiss these claims as procedurally barred.

As to Claim (5), Stewart argues that because the ACCA enhancement was erroneously applied to him, he is "actually innocent" of that adjustment, which should serve to excuse his default of the claim on appeal. *See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (recognizing that actual innocence can be exception to procedural default in career offender sentencing context). For reasons discussed below in this Opinion, I find that Stewart has failed to make an adequate showing of actual innocence so as to excuse his default of Claim (5), and that this claim must be dismissed.

---

[1] To show actual innocence sufficient to excuse procedural default of these claims challenging his conviction, Stewart must show that "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. *Bousley*, 523 U.S. at 623 (internal quotation marks and citation omitted). Stewart makes no such showing here.

B

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland*, 466 U.S. at 687. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 669. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. If it is clear that the defendant has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other prong. *Id.* at 697. In a § 2255 motion, the defendant bears the burden of proving his claims by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

1. Shelton's Grand Jury Testimony.

In Claim (1)(b), Stewart claims that trial counsel should have moved to quash the Indictment or moved for a new trial, based on Shelton's admission before trial that he had lied when he told the grand jury that Stewart had brought

the gun into the car.  Stewart alleges that the prosecutor told defense counsel before the grand jury proceeding that Shelton was going to lie, but nevertheless called Shelton to testify and then proceeded to trial under the allegedly defective indictment that resulted.

As I have observed, "there is not unanimity among the circuits as to claims of indictment based on alleged perjured testimony."  *United States v. King*, No. 1:08CR00041, 2009 WL 1325758, at *1 (W.D. Va. May 11, 2009) (unpublished) (citing for comparison *United States v. Basurto*, 497 F.2d 781, 784 (9th Cir. 1974) and *United States v. Reyes-Echevarria*, 345 F.3d 1, 5 (1st Cir. 2003)).  On the one hand, in *Basurto*, the Ninth Circuit held that

> the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached.

497 F.2d at 785.  On the other hand, in *Reyes-Echevarria*, the First Circuit reaffirmed its prior holding that "'[a] court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is merely a preliminary phase and all constitutional protections are afforded at trial.'"  345 F.3d at 5 (quoting *United States v. Flores-Rivera*, 56 F.3d 319, 328 (1st Cir. 1995)).  It is undisputed, however, that nearly all defects in grand jury proceedings are rendered harmless by a conviction at trial.  *United States v. Mechanik*, 475 U.S. 66, 73 (1986).

Nothing in the record establishes with certitude, even now, which of Shelton's stories about the gun is true. Therefore, Stewart has not met his burden to prove that the prosecutor knew beforehand which version Shelton would relate to the grand jurors or which version was a lie. Moreover, if the prosecution had taken steps to correct the "lie" by presenting the grand jury with Shelton's other versions of how the gun came to reside between the front seats of the car, the likely result would have been an indictment charging Stewart for constructive possession of a firearm as a convicted felon.

I am satisfied that any possible defect in the grand jury proceedings related to Shelton's testimony was rendered harmless by the trial jury's finding of guilt beyond a reasonable doubt after hearing all the evidence and by the Fourth Circuit's ruling that the trial evidence, including Shelton's inconsistent gun stories, was sufficient to support the jury's finding that Stewart knowingly possessed the gun, whether actually or constructively. *Stewart*, 269 F. App'x at 332 (citing *United States v. Scott*, 424 F.3d 431, 435-36 (4th Cir. 2005) (discussing constructive and actual possession)).

In light of the foregoing, Stewart cannot demonstrate any reasonable probability of a different outcome, but for counsel's failure to challenge the indictment or move for new trial based on Shelton's shifting accounts. I find that

Claim (1)(b) fails under the prejudice prong of the *Strickland* standard and will dismiss it accordingly.

2. Probable Cause for Arrest.

"Probable cause" sufficient to justify an arrest without a warrant requires "facts and circumstances within the officer's knowledge" sufficient to support a prudent person's belief that "the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). It is well established that where the totality of circumstances indicates that occupants of a vehicle could solely or jointly possess contraband found inside, officers have probable cause to arrest any or all of the passengers. *Maryland v. Pringle*, 540 U.S. 366, 371-73 (2003) (finding that officers had probable cause to arrest front seat passenger where cocaine was found in glove compartment).

In Claim 3(a), Stewart faults counsel for failing to argue for suppression of his post-arrest statements based on a theory that Officer Tuck had no probable cause to arrest Stewart on May 8, 2006. He relies on Shelton's statement to Tuck that the gun was his and Tuck's testimony that he did not see the locations within the car from which Shelton retrieved the gun or the clip.

Counsel reasonably could have believed, however, that arguing lack of probable cause for Stewart's arrest would fail. Shelton's verbal claim of gun ownership was undercut by the dispatcher's information to Tuck that the gun had

been reported stolen. Moreover, Shelton told Tuck that the gun was between the seats and the clip was in the glove compartment. This information that the stolen weapon had been in such close proximity to Stewart in the passenger seat, along with Stewart's own failure to give accurate identification information, would support a prudent officer's reasonable belief that both front seat occupants had jointly committed the crime of possession, or constructive possession, of the stolen firearm. I find no deficient performance or resulting prejudice here, and will deny relief as to Claim 3(a).

3. Defense Cross-examination of Tuck.

On direct, Tuck testified that just before Stewart was transported from the arrest scene to the police station, he told Tuck, "You've got me, Officer. The gun in the vehicle was mine. . . . No need to charge both of us." (Tr. 18, Jan. 18, 2007.) On cross-examination, defense counsel elicited Tuck's acknowledgement that Stewart made these comments sarcastically, out of resentment at being charged.[1]

---

[1] Specifically, counsel questioned Tuck as follows:

Q: . . . . was Mr. Stewart upset at that point in time?

A: He was a little agitated.

Q: He was being sarcastic with you, too, wasn't he, resentful of being charged? He was resentful of being charged with this offense?

A. Correct.

(*Id.* 26-27.)

Then, on redirect, the prosecutor questioned Tuck about additional verbal statements that Stewart made after ending his written statement to police, including his claim that "he'd beat this charge in New Jersey before." (*Id.* 28.) Stewart faults counsel for reemphasizing the statement that the gun was his, for opening the door for redirect examination about Stewart's verbal statement that he had earlier received a similar charge, and for failing to object to admission of Tuck's testimony about Stewart's prior criminal charge.

I find no deficient performance or prejudice here. Stewart's admissions about owning the gun were in the record, and counsel's attempt to characterize them and Stewart's other unrecorded statements to Tuck as sarcasm, in an attempt to minimize their impact on jurors, was not unreasonable strategy. Nor did this line of questioning "open the door" to allow the prosecutor to ask Tuck any question she could not otherwise have asked about Stewart's post-arrest statements. Finally, the Indictment charged Stewart with possession of the firearm *as a convicted felon*, and Stewart also stipulated at trial that he was a convicted felon at the time of the traffic stop. Thus, allowing the jury to hear his stated claim that he had been previously charged with a crime was not informing them of anything new. For these reasons, I cannot find deficient performance under *Strickland* or any reasonable probability that the outcome at trial would have been

different if counsel had acted as Stewart believes he should have.  I will deny relief as to Claim (3)(b).

4.  Constructive Amendment.

Stewart asserts in Claim (3)(c) that counsel should have argued that the government's theory at trial, that Stewart constructively possessed the firearm, constituted a constructive amendment of the indictment, which was based on Shelton's grand jury testimony that Stewart brought the gun to the car.  He is mistaken.

> A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.

*United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994).  It is well established, however, that evidence of constructive possession of a firearm can be sufficient to support a conviction under § 922(g)(1).  *United States v. Branch*, 537 F.3d 328, 343 (4th Cir. 2008).  "A person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself or over the premises or vehicle in which it was concealed."  *United States v. Singleton*, 441 F.3d 290, 296 (4th Cir. 2006) (internal quotation marks and citation omitted).

Count One of the Indictment notified Stewart that the government would attempt to prove possession in violation of § 922(g)(1) by whatever means, and the

fact that the prosecution's case at trial included evidence of constructive possession did not change the nature of the charge itself. Therefore, counsel had no viable argument that the government's trial evidence constructively amended the indictment. Finding neither deficient performance nor prejudice under *Strickland*, I will deny relief on Claim (3)(c).

5. Defense Trial Strategy.

Stewart claims that counsel pursued an inconsistent and illogical trial strategy by emphasizing evidence that Stewart did not actually possess the firearm. I cannot agree. Shelton was the primary witness supporting either of the government's theories of possession. Counsel further discredited Shelton's stories about the gun by highlighting evidence that Stewart's fingerprints were not found on the weapon, that no one ever saw him touch the weapon, and that the gun was too heavy to have been concealed in the sweatpants Stewart was wearing. Given the options the evidence presented to counsel, I cannot find this strategy unreasonable. Moreover, Stewart does not offer any more viable defense that counsel could have offered under the circumstances. I will deny relief on Claim (3)(d).

6. Witness in Prison Garb.

Stewart faults counsel in Claim (3)(e) for failing to object when the government called Arrington to the stand in his prison clothing and shackles and

allowed him to testify about having been incarcerated with Stewart. This claim fails.

Stewart relies on the principle that the prosecution cannot "compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle v. Williams*, 425 U.S. 501, 512 (1976). In cases where the jury knows from the nature of the case or the testimony that the defendant and/or witnesses at his criminal trial are inmates, however, courts have "frequently held" that the witness' known status as an inmate "ameliorates any prejudice that might have flowed from the jury seeing him in handcuffs" or other prison accoutrements. *Deck v. Missouri*, 544 U.S. 622, 652 (2005) (citing other cases).

Counsel reasonably could have believed that an objection to Arrington's dress as prejudicial to Stewart would fail, given the jury's knowledge that Stewart himself was a convicted felon and Arrington's testimony that his conversations with Stewart occurred in prison. Moreover, it is unlikely that an objection to Arrington's dress would have resulted in total exclusion of his probative testimony that corroborated Shelton's testimony about the shooting range and about Stewart's request for a gun when he called for a ride on May 8, 2006. Stewart cannot show that the adverse impact of this testimony was heightened in any significant respect because of Arrington's prison clothing, or that it would have been less damaging if delivered by a man in street clothes. Because I find that Stewart cannot

demonstrate any deficiency in counsel's performance or any reasonable probability that his proffered objection would have resulted in a different outcome, his claim fails under both prongs of *Strickland*. I will deny relief accordingly as to Claim 3(e).

7. Appellate Counsel's Strategy.

Stewart asserts that appellate counsel should have raised the arguments presented in Claims (1), (2), and (3), including his complaints about trial counsel's performance. Because counsel has no constitutional duty to raise on appeal every non-frivolous issue the defendant requests, *Jones v. Barnes*, 463 U.S. 745, 754 (1983), Stewart must satisfy the *Strickland* prongs to succeed in this claim. For the same reasons that he fails to demonstrate deficient performance by trial counsel and/or lack of resulting prejudice, however, his claims of ineffective assistance by appellate counsel fail under *Strickland*. Moreover, because his claims of ineffective assistance can be fully addressed now in this § 2255 proceeding, Stewart has not demonstrated that but for counsel's failure to raise them on appeal, the outcome on these claims would have been different, and as such, he fails to satisfy the prejudice prong under *Strickland*. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) (holding that ineffective assistance claims may be properly raised in a § 2255 motion even if they could also have been raised on appeal). I will deny relief on Claim (4).

1.  Application of the ACCA Enhancement.

The ACCA imposes a fifteen-year mandatory minimum sentence when a defendant who is convicted of violating § 922(g) has three previous convictions for a violent felony or a serious drug offense or both.   18 U.S.C.A. § 924(e)(1). Generally, for purposes of this sentence enhancement, a "serious drug offense" is a drug trafficking crime punishable by a maximum term of ten years or more, while a "violent felony" is one "punishable by imprisonment for a term exceeding one year." § 924(e)(2)(B).

The Presentence Investigation Report ("PSR") in this case indicated the reporting probation officer's finding that Stewart's Base Offense Level ("BOL") was 24, with a two-level enhancement for the stolen firearm, bringing the Adjusted Offense Level to 26, and that his nineteen criminal history points for prior convictions resulted in a Criminal History Category VI.   His guideline range under these calculations would have been 100 to 125 months imprisonment.   The PSR also found, however, that five of Stewart's prior convictions qualified as "serious drug offenses" or "violent felonies," making him eligible for an ACCA sentence enhancement under § 924(e).   Stewart made no objection to this characterization of his prior convictions.   With ACCA status, his Total Offense Level was increased to

Case 1:06-cr-00046-JPJ   Document 149   Filed 10/03/11   Page 19 of 27   Pageid#: 631

33, with the Criminal History Category VI, resulting in a guideline range of 235 to 292 months imprisonment.

At the sentencing hearing on April 18, 2007, with no further objections from the parties, I adopted the PSR and its finding that Stewart was an armed career criminal under § 924(e) and faced a sentencing range of 235 to 292 months. I sentenced him to 240 months of imprisonment.

2. *Begay's* Interpretation of ACCA "Violent Felony."

The ACCA definition of "violent felony" is:

any crime punishable by imprisonment for a term exceeding one year [that]

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 924(e)(2)(B). Before April 2008, when the state statute of the defendant's prior conviction did not expressly include the elements listed in § 924(e)(2)(B)(i) and was not one of the offenses listed in clause (ii), courts in the Fourth Circuit looked to state statutory language and made "common-sense judgments about whether a given offense proscribe[d] generic conduct with the potential for serious physical injury to another" so as to fall under the "otherwise" portion of § 924(e)(2)(B)(ii). *United States v. Custis*, 988 F.2d 1355, 1363 (4th Cir. 1993).

Case 1:06-cr-00046-JPJ   Document 149   Filed 10/03/11   Page 20 of 27   Pageid#: 632

In *Begay v. United States*, 553 U.S. 137 (2008), the Supreme Court issued its opinion. The Court interpreted the presence of the example crimes listed in clause (ii) as an "indicat[ion] that the statute covers only similar crimes, rather than every crime that '"presents a serious potential risk of physical injury to another."'" *Id.* at 142 (quoting § 924(e)(2)(B)(ii). Thus, if the elements of the defendant's prior offense do not include one of the elements listed in clause (i) and the crime of conviction is not one of the examples listed in clause (ii), then it must be a crime that is "roughly similar, in kind as well as in degree of risk posed, to the examples" in clause (ii), or it does not support an enhancement. *Id.* at 143 (internal quaotation marks and citations omitted).

In determining whether a prior conviction falls within the § 924(e) definitions, the sentencing court is to "consider the offense generically, that is to say, . . . examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* at 141 (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990) (adopting this "categorical approach")). A "modified categorical approach" applies where "the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not. . . ." *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010). In such a case, the court may consult only certain verified portions of the

trial record, including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, jury instructions, or verdict forms. *Shepard v. United States*, 544 U.S. 13, 25 (2005) (plurality opinion).

3. Stewart's Procedural Hurdles.

Stewart's Claim (5) alleges that his ACCA sentence is unlawful, because three of the five prior convictions used to enhance his sentence under § 924(e) do not qualify as prerequisites for such an enhancement. A claim that the defendant's "'sentence was in excess of the maximum authorized by law'" is expressly cognizable under § 2255. *See Welch v. United States*, 604 F.3d 408, 412-13 (7th Cir. 2010) (quoting § 2255(a)). Stewart's claim, however, is procedurally defaulted because he did not raise it during trial or appellate proceedings. *Bousley*, 523 U.S. at 622. As stated, the court may address such defaulted claims only if the defendant makes a sufficient showing of cause for the default and resulting actual prejudice or makes a sufficient showing of actual innocence. *Id.* Stewart asserts that the court can address the merits of his sentencing error claim because he is actually innocent of ACCA status.

The *Bousley* case involved a defendant seeking an actual innocence exception to default based on a Supreme Court decision that reinterpreted the statute under which he stood convicted in such a way that his conduct was no

longer criminal.[2]  *Id.* at 623.  The Fourth Circuit has extended the actual innocence exception to excuse default of noncapital sentencing claims in the rare circumstance where the defendant proves by clear and convincing evidence that he is actually innocent of one of the prior convictions that made him eligible for sentencing as an habitual offender.  *United States v. Pettiford*, 612 F.3d 270, 284-85 (4th Cir.) (interpreting *Mikalajunas*, 186 F.3d at 492-93,[3] and *United States v. Maybeck*, 23 F. 3d 888, 893 (4th Cir. 1994)), *cert. denied*, 131 S. Ct. 620 (2010).  Thus, in this circuit, "actual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes."[4]  *Pettiford*, 612 F.3d at 284.

---

[2]  Retroactivity under *Teague v. Lane*, 489 U.S. 288, 306 (1989), is a concern in some cases seeking § 2255 application of a Supreme Court decision issued after the defendant's conviction becomes final.  *See, e.g., Bousley*, 523 U.S. at 619-21.  In this case, the Fourth Circuit decided Stewart's direct appeal on March 13, 2008, but thereafter withdrew its mandate and did not enter final judgment until December 31, 2008, after the *Begay* decision.  Thus, application of *Begay* to an undefaulted § 2255 claim in his case would not fall under *Teague*'s retroactivity rules.  489 U.S. at 306.

[3]  The Court in *Mikalajunas* also noted that the Supreme Court "has not addressed whether the actual innocence exception can be applied to sentencing outside the capital context, and this question has divided the courts of appeals."  186 F.3d at 494 (citing other cases).

[4]  *But see United States v. Williams*, No. 09-7617, 2010 WL 3760015, at *2 (4th Cir. Sept. 24, 2010) (unpublished) (applying actual innocence exception to excuse default of ACCA challenge under § 2255 where post-sentencing precedent expressly ruled that defendant's prior conviction for failing to stop for a blue light was "under no circumstance" a violent felony under § 924(e)).

Case 1:06-cr-00046-JPJ   Document 149   Filed 10/03/11   Page 23 of 27   Pageid#: 635

Stewart argues that three of his five prior convictions are now improperly classified as predicate crimes under the ACCA. He does not offer any evidence or indication that he is factually innocent of any one of those prior offenses. Accordingly, he fails to make a sufficient showing of actual innocence so as to support an exception to his procedural default of his ACCA claim. Therefore, I must deny relief on this sentencing error claim.

4. Ineffective Assistance of Counsel as to the ACCA Predicates.

A federal habeas petitioner may bring an ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal. *Massaro*, 538 U.S. at 504. Thus, the procedural default doctrine does not bar consideration of such claims under § 2255.

When Stewart added his ACCA claim to his § 2255 motion, however, he did not argue that his trial counsel was ineffective in failing to object to use of his prior convictions in support of the ACCA enhancement. After the government responded to the amended claim, Stewart's appointed habeas counsel filed a response to the government's motion regarding the ACCA claim, but he also stated

Case 1:06-cr-00046-JPJ   Document 149   Filed 10/03/11   Page 24 of 27   Pageid#: 636

no ineffective assistance claim on Stewart's behalf.[5]  Therefore, no ineffective assistance claim on this issue is properly before the court.

In any event, I find that Stewart could not satisfy both prongs of the *Strickland* analysis here.  As stated, the PSR classified five of Stewart's prior convictions under New Jersey law as either crimes of violence or serious drug offenses for purposes of the § 924(e) enhancement.  (PSR ¶¶ 28, 30, 32, 36, and 37.)  In this § 2255 proceeding, the parties agree that Stewart's 1993 aggravated assault conviction (¶ 30) and his 1994 burglary conviction (¶ 32) are violent felonies under § 924(e)(2)(B).  Stewart argues, however, that his 1992 escape conviction (¶ 28) and his 1999 child endangerment conviction (¶ 36), do not

---

[5]  Stewart's response to the government's Motion to Dismiss includes some discussion of cases involving ineffective assistance claims and due process claims related to ACCA challenges since *Begay*, none of which required the court to engage in a procedural default analysis.  *See United States v. Tucker*, 603 F.3d 260, 266-67 (4th Cir. 2010) (granting § 2255 relief upon finding that counsel's failure to object to use of defendant's prior conviction for misdemeanor offense of assault and battery as predicate violent felony offense under ACCA was objectively unreasonable and prejudicial); *United States v. Shipp*, 589 F.3d 1084, 1089-91 (10th Cir. 2009) (granting § 2255 relief upon finding that ACCA sentence, based on escape conviction that did not qualify under new Supreme Court precedent as a violent felony for ACCA purposes, represented a "complete miscarriage of justice" in violation of defendant's due process rights; defendant's assertion of the ACCA challenge on appeal had been unsuccessful under controlling precedent at  time of appeal); *Welch*, 604 F.3d at 413 (granting § 2255 relief based on *Begay* challenges to ACCA predicate offenses; defendant had raised pro se objections to PSR recommendations regarding ACCA predicate offense, and government did not argue procedural default in the § 2255 proceeding).  These cases do not provide grounds to relieve Stewart from the procedural default bar in light of the *Pettiford* decision limiting actual innocence in this context to proof of factual innocence of the prior crime itself.

qualify as violent felonies and his 1999 drug felony (¶ 37) does not qualify as a serious drug offense under the statute.

Under controlling Fourth Circuit precedent at the time of sentencing, counsel reasonably could have believed that Stewart's escape conviction and his child endangerment conviction qualified as ACCA violent felonies. *See Custis*, 988 F.2d at 1363 ("generic conduct with the potential for serious physical injury to another" qualified as ACCA violent felony); *United States v. Hairston*, 71 F.3d 115, 117-18 (4th Cir. 1995) (finding under pre-*Begay* precedent that escape convictions qualify as ACCA violent felonies), Counsel cannot be deemed ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." *See Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987). With ACCA status clearly established based on the four qualifying convictions, a successful challenge at sentencing to use of the prior drug conviction would have had no effect on application of the ACCA enhancement. Thus, Stewart cannot show deficient performance or prejudice under *Strickland* based on counsel's failure to challenge the characterization of the 1999 drug conviction as a "serious drug offense."

## III

In conclusion, I find that Stewart is not entitled to relief under § 2255. His claims of trial court error are procedurally defaulted, he fails to demonstrate any

ground for exception to these defaults, and his claims of ineffective assistance of counsel are without merit.

A separate order will be entered forthwith granting the government's Motion to Dismiss and denying the defendant's § 2255 motion.

DATED:  October 3, 2011

/s/  James P. Jones
United States District Judge